**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|

JOSE OMAR AMAYA AMAYA,                          *

      **Plaintiff,**                                    *

v.                                                                    *          **Civil Case No.: PWG-14-749**

YOUNG & CHANG, INC., *et al.*,                     *

      **Defendants.**                                  *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Plaintiff Jose Omar Amaya Amaya filed this action against his former employer, Young & Chang, Inc. d/b/a Ichiban Japanese & Korean Restaurant ("Ichiban") and Suzie Kim, who operated Ichiban, seeking damages for its alleged failure to pay proper overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-430.  Three months after Defendants answered the Complaint, the parties jointly moved for court approval of the settlement agreement they have executed.  I find the net amount Amaya is to receive to be fair and reasonable in light of the facts of this case.  However, because Plaintiff has not provided sufficient information for me to determine the reasonableness of the attorneys' fees, I will ask Plaintiff to supplement the filings before I approve the agreement.[1]

---

[1] I have reviewed carefully the Joint Motion for Approval of Settlement, Memorandum in Support, and Settlement Agreement, ECF No. 11; as well as the Complaint, ECF No. 1; Answer, ECF No. 5; and Disclosure of Damages ("Disc."), ECF No. 9.  A hearing is unnecessary because the issues are presented adequately in the filings.  *See* Loc. R. 105.6 (D. Md. Jul. 2014).

## I.    BACKGROUND

Defendants Young & Chang, Inc., a Maryland corporation, and Suzie Kim operate the Ichiban Restaurant.   Compl. ¶ 4; Joint. Mem. 2.[2]   Amaya worked for Ichiban an average of seventy-three hours per week from January 1, 2010 until November 13, 2013.  Compl. ¶¶ 8, 11, 12.  Plaintiff claims he was paid $660 every two weeks—less than minimum wage—and that he was not paid overtime wages.  *Id.* ¶¶ 9, 10, 13.  On that basis, he filed a two-count Complaint, seeking approximately $65,000 in wages and overtime, and an equal amount in liquidated damages.  *Id.* ¶¶ 18, 43.   Ichiban, however, disputes both Amaya's average work hours and payment amount.  Answer ¶¶ 9, 11.

I held a Fed. R. Civ. P. 16 telephone conference on April 3, 2014 and then, on June 25, 2014, the parties filed the pending Joint Motion to Approve Settlement.   The Settlement Agreement provides that Amaya releases Ichiban for all claims related to unpaid wages, minimum wages, and overtime pay, including attorneys' fees.  Settlement Agr. ¶ 2.  It contains a confidentiality clause restricting disclosure of the settlement agreement.  *Id.* ¶ 4.  The Settlement Agreement does not contain a provision governing whether Amaya is the prevailing party for purposes of attorneys' fees or costs under 29 U.S.C. § 216(b), but it does include claims for attorneys' fees in the specific release.  *Id.* ¶ 2.   The $30,000 global settlement splits into (1) $10,000 to Amaya for unpaid overtime, (2) $9,550 to Amaya for liquidated damages, and (3) $10,550 to Amaya's lawyers in attorneys' fees.  *Id.* ¶ 1.  The attorneys' fee was calculated by taking thirty-three percent of the settlement offer pursuant to a contingent-fee arraignment.  *See* Joint Mem. 9.

---

[2] Page numbers for citations to the Joint Memorandum refer to the CM/ECF page number, as the Joint Memorandum's pages are unnumbered.

## II.    DISCUSSION

### A.  FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).  Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*."  *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)).  The settlement must "reflect[] a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement.  *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)).  These factors are most likely to be satisfied where there is an "assurance of an

3

adversarial context" and the employee is "represented by an attorney who can protect [his] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

### B. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. The Joint Motion and Memorandum, as well as the previous filings, make clear that several FLSA issues are in *bona fide* dispute. Most importantly, the parties disagree about whether Ichiban is liable at all in light of 28 U.S.C. § 203(m), which provides wage offsets for Amaya's tips and meal credit. Joint Mem. 5, ¶ 4. Additionally, the amount of damages sought in the Complaint ($128,908.12) requires the success of Amaya's equitable tolling theory. *Id.* at 5, ¶ 1. And, the statute of limitations set in § 255(a) would restrict a substantial amount of Amaya's claims unless Ichiban's alleged violation was willful, which the parties dispute. *Id.* at 5, ¶ 2. Accordingly, *bona fide* disputes exist as to § 203(m) credits, tolling, and the statute of limitations.

### C. Fairness & Reasonableness

In finding this settlement fair and reasonable, I should evaluate several factors, including: "'(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.'" *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

4

First, although formal discovery could have begun after the Fed. R. Civ. P. 16 conference, the parties represent that in lieu of formal discovery, they informally exchanged written calculations and projections, records, and legal authority. Joint Mem. 7, 9–10. By avoiding formal discovery, resources that otherwise would have been consumed by the litigation were made available for settlement, and the risk and uncertainties for both parties were reduced. The total proposed settlement, exclusive of attorneys' fees, would compensate Amaya for approximately thirty-one percent of the back pay in Amaya's Fed. R. Civ. P. 26(a)(1)(A)(iii) disclosure. Settlement Agr. ¶ 1; Disc. 1. However, the informal discovery exchanged led Defendant to calculate damages, based on figures that "fall somewhere between each of the party's respective positions," at $15,100. Joint Mem. 5, ¶ 3 & 6, ¶ 6. Under the proposed settlement, he will receive about 130 percent of this estimate. *See id.* at 10 (Amaya to receive $19,550 total); Settlement Agr. ¶ 1. Amaya "agreed to the settlement figure as a reasonable compromise between the parties' calculations," which they made "under various scenarios (i.e., compromise positions on the number of hours worked, the amount of meals for credit, the tip credits, etc.)." Joint Mem. 7.

The second, fourth, fifth, and sixth factors can be analyzed together. Although the case may be resolved early, the settlement will release only Amaya's claims and will not affect other employees. *See generally* Manual for Complex Litigation (Fourth) § 32.461 (2004) ("the judge should ensure that members of the proposed class are not prejudiced"). Next, the complexity of the case is shown through the fact-intensive disputes surrounding § 203(m) credits, equitable tolling, and the statute of limitations. Joint Mem. 6–7. Essentially, it is possible that "Plaintiff's income was sufficiently enhanced with meal and tip credits" so as to "eliminate[] or substantially reduce[] the Plaintiff's minimum wage claim." *Id.* at 7, ¶¶ 2, 5. In light of the dearth of records

supporting Amaya's claim, the hours worked and tips received would become hotly disputed questions of fact. Counsel believe that their settlement reached fair compromise positions on the disputed issues based on the information exchanged. *Id.* at 7, ¶ 6.

The Settlement Agreement contains a specific release covering only Amaya's claims for unpaid wages, minimum wages, and overtime pay. *See* Settlement Agr. ¶ 2. General releases can render settlement agreements unreasonable. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Fanklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). Here, the narrow release supports the compromise amount that Amaya is to receive, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claim. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)). Amaya is to receive thirty-one percent of what he would recover if he prevailed on every factual and legal dispute and almost 130 percent of what he would recover if he prevailed on the factual disputes, but not the legal disputes (e.g., tolling and statute of limitations). And, the compromise avoids the possibility that Amaya could lose entirely, given the § 203(m) credits for tips and meals.

The parties do not provide expressly that Amaya is not a prevailing party, but they also do not seek entry of judgment. In a recent opinion, I acknowledged that some courts view settlements without a stipulated judgment as *per se* unreasonable. *See Duprey v. Scotts Co. LLC*, ---- F. Supp. 2d ----, 2014 WL 2174751, at *5 (D. Md. May 23, 2014) (citing, *inter alia*, *Lynn's*

*Food Stores*, 679 F.2d at 1353; *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012)).   However, in the absence of clear binding authority to the contrary, a plaintiff "is permitted to agree that—in light of the *bona fide* disputes as to liability and the costs and risks of proceeding on the merits—accepting a lesser amount than he ultimately could receive at trial is reasonable." *Id.*   Amaya's settlement, like that in *Duprey*, "is better viewed as a stipulation to an amount that fairly compensates [Plaintiff] for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings*." *Id.*   The amount provided in consideration for Amaya's narrow release is fair and reasonable in light of the particular circumstances of this case, including Amaya's recognition of the strong defenses asserted by Ichiban, as explained above.[3]

Finally, there is no suggestion of fraud or collusion, and Amaya's counsel represented him from the outset of the case.   Joint Mem. 9–10; *see Lomascolo*, 2009 WL 3094955, at \*12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.").   Having considered these factors, I find that the settlement is fair and reasonable.   *See Saman*, 2013 WL 2949047, at \*3; *Lomascolo*, 2009 WL 3094955, at \*10.

---

[3] As noted, the Settlement Agreement contains a confidentiality clause restricting disclosure of the settlement agreement.   Settlement Agr. ¶ 4.   A confidentiality clause in an FLSA settlement agreement is "not permitted without compelling reasons" to justify the confidentiality. *Salamone v. Balt. Diamond Exch., Inc.*, No. JKB-14-1507, 2014 WL 2930788, at \*1 (D. Md. June 27, 2014) (citing *Carpenter v. Colonial Mgmt. Grp., LP*, No. JKB-12-686, 2012 WL 2992490, at \*2 (D. Md. July 19, 2012)).   In *Carpenter*, this Court denied a motion to approve an FLSA settlement agreement because it contained a confidentiality provision "without any argument to support its inclusion," and it was accompanied by a motion to seal that "failed to establish a basis for sealing."   2012 WL 2992490, at \*2.   The court held that the confidentiality provision, included as part of an agreement the parties sought to seal, "contravene[d] the important purposes of the [FLSA] and defeat[ed] both public and private efforts to enforce it." *Id.*   But, here, as in *Salamone*, "the Settlement Agreement is filed as a matter of public record," such that the confidentiality clause "is of no practical effect."   *See Salamone*, 2014 WL 2930788, at \*1 (approving FLSA settlement agreement).   Therefore, the confidentiality clause does not make the settlement unreasonable, even if the clause itself might be unenforceable.   *See id.*

### D.  Attorneys' Fees

Next, the Settlement Agreement's provisions regarding attorneys' fees must be assessed for reasonableness.  *Saman*, 2013 WL 2949047, at \*6.  Amaya retained his attorneys under a contingent-fee arrangement providing counsel forty percent of his settlement.  *See* Joint Mem. 9.[4] Counsel reduced this amount to thirty-three percent "as a courtesy and also because the litigation was at a relatively early stage."  *Id.*

Notably, under 29 U.S.C. § 216(b), "'the wronged employee should receive his full wages *plus* the [liquidated damages] penalty without incurring any expense for legal fees or costs.'"  *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (quoting *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946) (emphasis added)); *see Robertson v. Alaska Juneau Gold Mining Co.*, 157 F.2d 876, 879 (9th Cir. 1946), *cert. granted in part, judgment modified*, 331 U.S. 793 (1947); *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947).  Thus, although contingent-fee arrangements are allowed, and sometimes even preferred, in many common-fund cases,[5] *see, e.g.*, *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 437 (D. Md. 1998) (citing authority from multiple circuits), a district court may abuse its discretion by granting attorneys' fees pursuant to a contingent-fee arrangement in an FLSA case, *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992) (concluding that "it was an abuse of discretion for the district court . . . to forgo the lodestar approach and to calculate reasonable attorney's fees by adopting instead the attorney's customary contingent-fee arrangement"); *Llora v. H. K. Research*

---

[4] Plaintiff's counsel is commended for disclosing this arrangement, as is required by Maryland Rule of Professional Conduct 3.3.

[5] Common-fund cases are where "'a litigant or a lawyer . . . recovers a common fund for the benefit of persons other than himself or his client [and] is entitled to a reasonable attorney's fee from the fund as a whole.'"  *US Airways, Inc. v. McCutchen*, ---- U.S. ----, 133 S. Ct. 1537, 1545 (2013) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

*Corp.*, No. 96-1552, 1997 WL 693062, at *1 (4th Cir. Oct. 29, 1997) (concluding that "it was an abuse of discretion for the district court to award attorney's fees that equaled one-third of the judgment award without adequately explaining its reasoning for failing to use the lodestar amount").  This is because "permitting contractual waiver of . . . the right to minimum wage, overtime compensation, liquidated damages, and attorney's fees—would nullify the purposes of the [FLSA]."  *Walthour v. Chipio Windshield Repair, LLC*, 944 F. Supp. 2d 1267, 1272 (N.D. Ga. 2013), *aff'd*, 745 F.3d 1326 (11th Cir. 2014), *cert. denied*, No. 13-1354, 2014 WL 1882772 (U.S. June 30, 2014).  Therefore, to allow a contingent fee that distributes a portion of the damages award to the attorney, thereby allowing the employee effectively to waive both the statutorily-mandated attorneys' fees and the portion of her wages and liquidated damages allocated to attorneys' fees, would be an impermissible infringement on the statutory award to the employee.  *See id.*; *see also O'Neil*, 324 U.S. at 706 & n.16.

Nonetheless, an attorneys' fee award negotiated pursuant to a contingent-fee arrangement can be approved if the court finds (1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach.  *See Silva*, 307 F. App'x at 351 ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."); *see also Pessoa v. Countrywide Home Loans, Inc.*, No. 06-1419, 2007 WL 1017577, at *3 (M.D. Fla. Apr. 2, 2007) ("In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fee.").

In this case, Ichiban offered Amaya $30,000 to resolve his FLSA claim, of which counsel will take one-third.   Joint Mem. 5–8.   At first blush, this agreement appears to distribute a portion of the statutory award to the employee, which would violate the principle of *O'Neil*. However, the parties reached the settlement amount to "allow [Amaya] to receive his wages as calculated in the compromise scenarios [and] a nearly equal amount as liquidated damages." Joint Mem. 7.   Additionally, they planned for the attorneys' fees to be "separate and apart from those amounts so as to not diminish his recovery." *Id.*; *see id.* at 9 ("The settlement includes the payment of the Plaintiff's attorneys' fees and costs as a separately paid item.").   The parties clearly intended that Amaya would not have to share with his attorneys the amount Ichiban intended for him in settlement.   While $19,550 is significantly less than Amaya initially sought, it is 130 percent of one estimate, made after informal discovery, of his possible recovery.   Thus, Amaya is receiving a reasonable amount in settlement, given his chances and recovery possibilities were the case to go to trial, and has secured an additional amount for attorneys' fees, which is less than, but close to the amount he would have owed his attorney under the contingency-fee agreement.   Therefore, I may approve the attorneys' fee award, provided that it is reasonable under the lodestar approach.

Under the lodestar approach, the Court multiplies "the number of hours reasonably expended . . . by a reasonable hourly rate" to achieve "an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Lyle*, 954 F.2d at 988 (applying lodestar approach to FLSA cases).   Although Plaintiff has listed the work his attorneys have done, *see* Joint Mem. 9–10, he not indicated the number of hours his attorneys worked or their hourly rate.   *See Travis v. Prime Lending*, No. 07-065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (stating that the plaintiff "must show

that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary"). Nor has he provided a basis for assessing the reasonableness of their rates under Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. Therefore, I will give Plaintiff until August 6, 2014 to supplement the record with this information.[6]

## III.    CONCLUSION

For the reasons explained above, the net amount proposed to resolve Amaya's claims provides a fair and reasonable compromise as to *bona fide* disputes of FLSA liability. However, I require additional information before ruling on the attorneys' fees provision. To that end, Amaya will be directed to supplement the record with the information discussed above by August 6, 2014. In the meantime, the Joint Motion will be held in abeyance.


Dated: <u>July 22, 2014</u>                          _____/S/_____

                                                    Paul W. Grimm
                                                    United States District Judge

jwr

---

[6] For guidance in providing this information, counsel should review Chief Judge Chasanow's opinion in *Saman*, where the parties were required to provide the same supplement. 2013 WL 2949047, at *6–7.